## O. S. DAVIS v. RANKIN & WHITWORTH.

1. JUSTICES' COURTS.—Much liberality is extended to uphold proceedings in courts held by justices of the peace.
2. SAME.—See a judgment and execution from proceedings in a Justice's Court held valid and sufficient to- pass title to land sold under them.
3. DEPUTY SHERIFF.—A levy and sale having been made by a deputy sheriff, it was competent for such deputy to execute the deed to the purchaser.
4. PARTIES—FORECLOSURE.—Proceedings in the District Court to enforce a vendor's lien, began on the day such sheriff's deed was placed on record, and not making the purchaser a party defendant, do not conclude the rights of such purchaser, and, as to his title, are void.

APPEAL from Hopkins. Tried below before the Hon. Green J. Clark.

The facts are sufficiently given in the opinion.

*Samuel J. Hunter*, for appellant.

I. The court erred in admitting as evidence the judgment of C. P. Campbell, justice of the peace, the execution thereon issued, and the sheriff's deed made. in pursuance of sale made under said execution.

1. A judgment is the decision of the court upon the issues made between the parties, and not a recital or memorandum of what the parties did or said on the trial.

The judgment is as follows:

"H. Sewell              Note $67.50; due Dec.
      *v.*                1st, 1859; citation issued
A. C. Beasley and S. M. Brown.   January 4th, 1860; F. H. Patrick, deputy sheriff; executed by copy January 7th. Defendants appeared and acknowledged judgment for principal, interest, and costs of suit.      C. P. CAMPBELL, J. P."

2. It must show by its phraseology an act by the court in his judicial capacity, and that act a grant of relief. (Freem. on Judg., secs. 50–52.)

3. It should be certain in itself (1) as to whom the relief is granted; (2) against whom it is granted; (3) the exact relief granted; (4) the time and place of rendering the judgment. (Paschal's Dig., art. 1182; Freem. on Judg., secs. 51, 52.)

4. Less formality is required of justices of the peace, but the elements of certainty—judicial action of the officer, the entry of the judgment, and the time of entry—are as important and necessary here as in courts of record. As to entering judgment and dating entry, see Paschal's Digest, art. 1182, and Freeman on Judgments, secs. 53, 55, and note. Attention is invited to the fact that in all the cases cited in Freeman's work on Judgments, where a meagre entry has been held to be good, that the entry, though consisting of but few words, was the judical voice of the court, speaking out his decision in tones of authority as to the final result of the case,—such as, "I give judgment;" "judgment rendered December 26, 1840;" "judgment for the plaintiff against the defendant, October 24, 1856;" "judgment for plaintiff," and the like,—and not a mere recital of what the parties said or did in his presence, as shown by the judgment under consideration.

5. An execution, to be valid, should correctly describe the

judgment—be authorized by it. It should show against whom the judgment was rendered, and conform to it; in favor of whom it was rendered, and the exact amount given by the judgment.

The only description given of the judgment in the execution is "a judgment had before me the 7th of January, 1860, in favor of H. Sewell." Signed, " C. P. Campbell, J. P." The amount of it is not stated; against whom it was rendered is not stated; in what court or county it was rendered is not stated. It states a date of rendition that is not shown in the judgment.

True, it commands the officer "to make of the goods, chattels, lands, and tenements of S. M. Brown and A. C. Beasley the sum of $67.95, principal and interest, with cost bill annexed," but it does not state that judgment had ever been rendered against Brown and Beasley for that amount or for any other amount. (Herm. on Ex., secs. 55, 64, and numerous authorities there cited.)

6. An execution is invalid if it gives interest, unless it is granted in the judgment, and the amount stated in the judgment in some certain or definite way.

The judgment relied on does not show what rate of interest the note sued on bore, nor from what date it should be computed. But the execution gives interest. The note was for $67.50, while the execution is for $67.95. (Criswell *v.* Ragsdale, 18 Tex., 445; Herm. on Ex., sec. 65; Hastings *v.* Johnson, 1 Nev., 613; Collais *v.* McLeod, 8 Ired., 221.)

II. The fourth assignment is that the court erred in rendering judgment for the defendants, when the proof showed that the plaintiff held the elder and superior title to the land in question, and the deeds under which defendants held had not been duly registered for five years next before the commencement of this suit.

1. As between vendor and vendee, the superior title to the land remains in the vendor until the notes given by the vendee for the purchase-money are fully paid off, and this

although the notes are not mentioned in the deed. The vendor's lien is a creature of law, arising out of the sale of land, and it exists regardless of the recitals in a deed.

2. A purchaser under a decree foreclosing the vendor's lien takes not only all the title of the vendee, but this superior title of the vendor.

Decrees were rendered foreclosing the vendor's liens in favor of Beasley and of Wood, both against S. M. Brown. Orders of sale issued thereon. The plaintiff Davis purchased the land in suit at the sales made under these orders, and a deed was made by the sheriff to him for the land, he paying $552.50 for it.

3. Third parties dealing with the vendee may acquire rights and equities in the land that will defeat the vendor's lien and his superior title, when sought to be enforced against them or those holding under them; but, to effect this result, those rights and equities must be specially plead and relied on. They cannot be proven or made available under the plea of not guilty in actions of trespass to try title.

4. The decrees of foreclosure in cases of Wood and Beasley *v.* Brown are binding upon Leftwick and those claiming under him, inasmuch as it is not claimed that he was an innocent purchaser, &c. It was not necessary to make him a party to Beasley's suit, for his deed was not upon record, nor was he in possession of the land at the institution of the suit; and it is not shown that Beasley had actual knowledge of his purchase. The burden of showing that Leftwick occupied, at the institution of this suit, a position that required them to make him a party in order to divest him of his equities, lay upon the defendants; and unless they make the proof the decree is binding upon him and them.

Beasley's suit to foreclose was filed April 26, 1860. Leftwick's deed was filed for record April 26, 1860, at 11 o'clock A. M. There is no evidence that Leftwick was ever in possession. The testimony of Davis and Buford is that Brown was in possession in the spring and summer of 1859, and

remained in possession some time afterwards. There is no evidence that Beasley had any notice, of any character, of Leftwick's purchase or of his claim to the land.

5. In the filing of a petition the law takes no notice of the fractions of a day. It presumes that it was filed on the first minute of the day its filing is dated. In the filing of a deed for record the law does take notice of the fractions of a day, for it requires the recorder to certify officially on the deed "the hour, day, month, and year" of the filing the same, and no presumptions are indulged as to the time of its filing. (Paschal's Dig., art. 5014.)

*Henderson & Capers*, for appellees, cited Morris *v.* Halbert, 36 Tex., 19; Tait *v.* Matthews, 33 Tex., 112; Langham *v.* Grigsby, 9 Tex., 493; Freem. on Judg., secs. 51, 52, 130; Bennett *v.* Gamble, 1 Tex., 124; Owen *v.* City of Navasota, 44 Tex., 518; Truehart *v.* McMichael, 46 Tex., 226; Herm. on Ex., 56, 57, 62, 64, 71; Paschal's Dig., arts. 1003, 3940, 3943; Miller *v.* Alexander, 8 Tex., 36; Berry *v.* Donley, 26 Tex., 744; Campbell *v.* Wilson, 6 Tex., 379; Dalton *v.* Rust, 22 Tex., 133; Clayton *v.* Frazier, 33 Tex., 100; Herm. on Ex., p. 368; Sayles' Prac., secs. 152, 154.

BONNER, ASSOCIATE JUSTICE.—This is a suit of trespass to try title for an undivided one-half interest in a lot in Sulphur Springs, instituted by the plaintiff and appellant, O. S. Davis, against the defendants and appellees, J. W. Rankin and John S. Whitworth. Judgment was rendered for appellees.

The chain of title relied upon by both parties is lengthy and involved in some confusion; but so much of the same as is considered necessary for this opinion may be stated as follows:

The plaintiff, in the first instance, claims under patent to Reilly and deed from Reilly to himself. The defendants claim under several mesne conveyances under the plaintiff down to a deed from Alice C. Beasley and her husband, J.

F. Beasley, to D. H. Wood, of date August 10, 1858. Secondary evidence was introduced of a lost deed from Wood to one S. M. Brown, of date March 5, 1859. The testimony further shows that on the 7th of January, 1860, H. Sewell recovered a judgment, before C. P. Campbell, a justice of the peace, against A. C. Beasley and S. M. Brown, upon which execution issued January 27, 1860, and was levied upon the undivided one-half interest in the lot sued for, the same having been pointed out to be levied upon by J. F. Beasley. At sale made under this execution, on March 6, 1860, this interest so levied upon was purchased by L. A. Leftwick, and the sheriff's deed made to him was filed for record April 26, 1860. The levy by virtue of the above execution was indorsed "John Mason, sheriff, by F. H. Patrick, deputy." and the sheriff's deed was signed in the same way. It was proven up for record by Patrick as deputy sheriff, and objected to, because it should have been proven up by the sheriff in person. The defendants further claim under several mesne conveyances from Leftwick; also by deeds from other parties, the origin of whose titles is not shown, down to themselves.

Plaintiff seeks to reinvest himself with title, and to avoid that under which defendants claim, as follows:

Judgment in favor of A. C. and J. F. Beasley against S. M. Brown, in the District Court of Hopkins county, rendered May 14, 1860, enforcing the vendor's lien on the land, upon petition filed on April 26, 1860.

Similar judgment in favor of D. H. Wood, on petition filed April 30, 1860.

Purchase by plaintiff, and sheriff's deed made to him November 10, 1860, under orders of sale issued on these judgments.

From the above, it will be seen that both plaintiff and defendants virtually claim title under S. M. Brown as a common source,—the plaintiff under the two judgments of the

District Court, and the defendants under the prior judgment of the justice of the peace.

The first alleged error assigned, arises upon the introduction in evidence of the judgment and execution of the justice of the peace; the plaintiff insisting that they were so informal as to be void, but if valid, that the title of Leftwick, the purchaser thereunder, was inferior to that acquired by the plaintiff under the sales enforcing the vendor's lien of said Beasley and Wood.

This judgment is as follows:

"H. Sewell       Note $67.50; due Dec. 1st, 1859; citation issued *v.*      A. C. Beasley and S. M. Brown. January 4th, 1860; F. H. Patrick, deputy sheriff; executed by copy January 7th. Defendants appeared and acknowledged judgment for principal, interest, and costs of suit.       C. P. CAMPBELL, J. P."

This execution, so far as it is necessary, is here set out:

" STATE OF TEXAS,
     " *Hopkins County.*
" *To any lawful officer of said county:*
" You are hereby commanded to make of the goods, chattels, lands, and tenements of S. M. Brown and A. C. Beasley the sum of $67.95, principal and interest, with cost bill annexed, and your costs and commissions arising, to satisfy a judgment had before me, on the 7th January, 1860, in favor of H. Sewell. Herein fail not," &c. Dated January 27, 1860. Signed, C. P. Campbell, J. P., with cost bill, levy, &c., indorsed.

Neither of these is as formal as usually found in courts of record and as should characterize all judicial proceedings, but they are believed to be as much so as is generally found in proceedings of justices of the peace, who, from necessity, are often selected from persons not " learned in all the wisdom" and technicalities of the science and practice of the law. It is believed that they are more certain than some

which have been upheld by the liberal construction of this and other tribunals. To declare such proceedings void would affect very seriously many rights now considered secure, and, in the language of a learned author, in treating of the validity of judgments of justices of the peace, "would end in the complete overthrow of most of their proceedings." (Freem. on Judg., secs. 53, 53*a;* Clay *v.* Clay, 7 Tex., 250.)

The levy, sale, and deed having been in fact made by Patrick as deputy sheriff, and this being an officer known to the law, the objection that the deed was acknowledged by him for record, and not by the sheriff in person, was not well taken. (Miller *v.* Alexander, 13 Tex., 506; Towns *v.* Harris, 13 Tex., 512.)

The effect, then, of the sale and deed under this judgment and execution was to convey the legal title to the interest in the lot sued for to Leftwick. The legal title, then, having passed under this sale to Leftwick, did the subsequent sale to enforce the vendor's lien, at which the plaintiff became the purchaser, under the circumstances as shown by the record, invest him with the superior title?

As the plaintiff relies upon an equity to override the legal title, the burden of proof devolves upon him to show all the requisites necessary to make it superior to this legal title. (McAlpine *v.* Burnett, 23 Tex., 649.)

The sale under the judgment of the justice of the peace was prior in point of time to the institution in the District Court of both said suits against S. M. Brown; and the deed of the sheriff under the sale to Leftwick was recorded on the same day on which the suit of E. C. and J. F. Beasley was instituted. The judgment of the justice of the peace was against A. C. Beasley, and the land was pointed out to be levied upon by J. F. Beasley, he under the statute having the sole management of the property of the wife, whether her separate property or her community interest.

The suit in favor of D. H. Wood was instituted on April 30, 1860, some days after the deed from the sheriff to Left-

wick had been recorded. We think, then, that the principle announced in the case of Byler *v.* Johnson, 45 Tex., 518, and other cases on this subject, should apply here, and that the plaintiffs in the subsequent suits in the District Courts should be held to have such notice of the legal title of Leftwick, as to have made him a necessary party to the suits to enforce the equitable lien. Not having been made such party, the judgment therein, under which plaintiff claims, could not, as to his interest, be made available as evidence to override the legal title under which defendants claim.

The plaintiff being required to recover on the strength of his own title, and having failed to prove a superior title in himself, the presumption in favor of the legality of the possession of the defendants and of the correctness of the judgment below should be indulged. As the case will not be remanded, it is not necessary to pass upon the other questions presented, and the judgment is accordingly affirmed.

AFFIRMED.